

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

EJK:SD/AEG  *271 Cadman Plaza East*
F.#2009R01519  *Brooklyn, New York 11201*

October 21, 2010

BY ECF and Hand Delivery

The Honorable Sterling Johnson, Jr.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:  United States v. Sarvjit Singh
           Criminal Docket No. 09-824 (SJ)

Dear Judge Johnson:

      On May 19, 2010, the defendant Sarvjit Singh pled guilty, pursuant to a plea agreement, to visa fraud in violation of Title 18, United States Code, Section 1546(a). The defendant is scheduled to be sentenced by Your Honor on October 26, 2010.

      On August 3, 2010, the Probation Department issued a Presentence Investigation Report ("PSR"), which indicates that the defendant's Guideline range is 10 to 16 months in custody. On August 18, 2010, the defendant filed a letter objecting to the Probation Department not affording the defendant a role reduction pursuant to U.S.S.G 3B1.2(b)(2). On September 24, the Probation Department issued an addendum to the PSR, which included the minor role adjustment. Accordingly, the defendant's guideline range is 6 to 12 months. The government concurs with the analysis set forth in the PSR and the addendum. Pursuant to paragraph 5(b) of the plea agreement, the government takes no position with respect to where within the Guidelines range the defendant's sentence should fall.

I.    Background

      In May 2007, the Department of Homeland Security, Immigration and Customs Enforcement ("ICE") began investigating

Thomas Archer, an attorney, for visa fraud.[1]  Specifically, the investigation concerned fraudulent I-687 legalization applications filed on behalf of illegal aliens who entered the United States before 1982.  The investigation revealed that The Law Office of Thomas Archer submitted false I-687 applications for status as a temporary resident of the United States on behalf of more than 230 clients between May 1, 2005 and January 31, 2007.

During the course of the investigation, agents learned that the defendant worked at The Law Office of Thomas Archer between July 2004 and July 2005.  The defendant recruited individuals from the Sikh community in Queens, New York to become clients for Archer.  The defendant also assisted Archer with interviewing clients, translating from Punjabi to English and completing the I-687 applications.

Over the course of the investigation, agents interviewed the defendant on several occasions.  On April 2, 2008, the defendant was interviewed at his home by ICE Special Agents Eric Silverman and Raj Bhatia.  During the interview, the defendant stated he could provide the agents with copies of what he believed was a fraudulent visa application of Rhuksana Rafique, an assistant to Archer who also worked at the law office.  At the conclusion of the meeting, Agent Silverman suggested that they meet again to obtain the documents.

A few weeks later, on April 24, 2008, the agents met with the defendant who provided copies of the supporting documents for the H1-B visa of Rafique.  In addition, the defendant said that he had acted as a recruiter of potential clients for Archer.

On May 2, 2008, Archer and Rafique were indicted on one count of conspiring to commit visa fraud, in violation of 18 U.S.C. § 371, and three substantive counts of visa fraud, each occurring between May 1, 2005 and October 19, 2006, in violation of 18 U.S.C. § 1546(a).[1]

Over a year later, in September 2009, the defendant contacted Agent Bhatia after receiving text messages from Thomas Archer.  On September 16, 2009, the defendant met with the

---

[1]  The grand jury later returned a superseding indictment adding a fourth substantive count.

agents and showed them the text messages he received. Subsequently, the agents made arrangements with the defendant to take his cell phone for further forensic analysis.

On October 20, 2009, the defendant contacted Agent Silverman and informed him of his intent to travel to India. The agent asked the defendant to set up a meeting with the Assistant U.S. Attorneys prior to traveling, in light of the upcoming trial of Archer and Rafique, which had been scheduled for November 17, 2009.

On October 26, 2009, the defendant voluntarily came to the U.S. Attorney's office. The defendant admitted that while working at the law firm between July 2004 and July 2005, he had prepared approximately ten false visa applications. The defendant named seven specific people on behalf of whom he prepared false visa applications. At the conclusion of the meeting, the government informed the defendant of its interest in the defendant as a potential witness against Archer and Rafique. The government also informed the defendant that, as a result of his own involvement in the conspiracy, before serving as a witness, the defendant would need to plead guilty to a cooperation agreement. The government contacted the Criminal Justice Act attorney of the day on the defendant's behalf. The defendant later retained his current counsel.

On November 2, 2009, the defendant and his counsel attended a meeting with the government. After the meeting, the government informed the defendant and his counsel of its continued interest in the defendant's cooperation pursuant to a cooperation agreement and guilty plea. The defendant declined to enter such an agreement.

On December 4, 2009, the grand jury returned an indictment charging the defendant with one count of conspiring between July 2004 and July 2005 to commit visa fraud, in violation of 18 U.S.C. § 371, and one substantive count of visa fraud, occurring on or about May 9, 2005, in violation of 18 U.S.C. § 1546(a).

A jury trial in <u>United States v. Thomas Archer, et al.</u>, 08-CR-288 (S-1)(SJ), commenced on March 15, 2010. On March 24, 2010, a jury returned a guilty verdict as to Thomas Archer on counts one, two, four and five and a guilty verdict as to

Rukhsana Rafique on counts one, two and four and a not guilty verdict as to Rafique on count five. [2]

On May 19, 2010, the defendant pled guilty pursuant to a plea agreement to visa fraud in violation of 18 U.S.C. 1546(a).

On October 20th, 2010, the Court sentenced Thomas Archer to 60 months. The following day, the Court sentenced Rhuksana Rafique to 18 months.

I. <u>Argument</u>

   A. <u>Legal Standard</u>

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." <u>Gall v. United States</u>, 128 S. Ct. 586, 596 (2007) (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented." <u>Id</u>. at 596-97 (citation and footnote omitted). "'When a factor is already included in the calculation of the [G]uidelines sentencing range, a judge who wishes to rely on that same factor to impose a sentence above or below the range must articulate specifically the reasons that this particular defendant's situation is different from the ordinary situation covered by the [G]uidelines calculation.'" <u>United States v. Sindima</u>, 488 F.3d 81, 87 (2d Cir. 2007) (citation omitted, alterations in <u>Sindima</u>).

II. <u>Section 3553(a) Factors Support A Guidelines Sentence</u>

Considering the factors enumerated under 18 U.S.C. § 3553(a), a Guidelines sentence appropriately applies to the defendant.

First, the defendant requests a sentence below the guidelines based upon his minimal role in the visa fraud conspiracy. (Def. Mem. 1). The defendant has been afforded the

---

[2] The government moved to dismiss count three before the trial began.

minor role departure in the plea agreement and the PSR. Accordingly, the applicable Guidelines range accounts for the defendant's minor role in the offense.

The defendant further contends that he "merits a significantly lower sentence than the other participants," noting that Archer received a sentence "well below the Guidelines." (Def. Mem. 16). While the Court downwardly departed from the guideline range of 78 to 97 months in its sentence of Thomas Archer, the sentence of 60 months is significant. The defendant's argument that he should receive a similar downward departure has no merit. The defendant's guideline range of 6 to 12 months appropriately reflects his conduct in the visa fraud scheme, which includes the downward departure for minor role, acceptance of responsibility and a document enhancement for a conservative estimate of 6 to 24 documents. Accordingly, the guideline range is appropriate.

Second, while the defendant is not seeking a downward departure pursuant to U.S.S.G. 5K1.1, he requests that his "assistance and extraordinary acceptance of responsibility" be considered for a below guideline sentence. (Def. Mem. 5). However, the defendant's assistance and acceptance were not extraordinary. The defendant asserts that the government was "satisfied with his truthfulness and candor" (Def. Mem. 15), but such candor is all but useless to the government when it is confined to an interview room and the defendant refuses to take the witness stand and provide his information to a jury. After the defendant declined to cooperate, the government obtained an indictment against him. The defendant then filed suppression motions and pled guilty only after the Court scheduled his trial. In short, far from "turning [him]self in," United States v. Rogers, 972 F.2d 489, 491 (2d Cir. 1992), the defendant put the government to its burden as much as any other defendant who is arrested and eventually pleads guilty. Accordingly, a sentence within the guidelines is appropriate.

Third, the defendant's status as the main caretaker of his son does not require a non-Guidelines sentence. See United States v. Vera Ramos, 296 Fed. Appx. 201, 203-04 (2d Cir. 2008) (affirming Guidelines sentence despite defendant's "'difficult upbringing' and 'very substantial family responsibilities'" and noting district court's observation that such circumstances are "almost universal" among defendants in illegal re-entry cases). The cases interpreting the Guidelines show that family ties and relationships warrant a downward departure only when they are truly "extraordinary." See United States v. Galante, 111 F.3d 1029, 1033 (2d Cir. 1997), superceded by statute on other

grounds, Pub. L. 108-21, 117 Stat. 650, as recognized in, United States v. Leiva-Deras, 359 F.3d 183 (2d Cir. 2004). Absent extraordinary circumstances, courts are discouraged from downwardly departing based upon family circumstances. Galante, 111 F.3d at 1034; United States v. Johnson, 964 F.2d 124, 128 (2d Cir. 1992)("Disruption of the defendant's life, and the concomitant difficulties for those who depend on the defendant, are inherent in the punishment of incarceration."). Defense counsel asserts that "the defendant is the primary caretaker of his son" who suffers from bipolar disorder. (Def. Mem. at 11). While the defendant's family circumstances are unfortunate, they are not unique and do not warrant a downward departure.

III. Conclusion

    For the foregoing reasons, the government respectfully submits that the Court should impose a sentence within the applicable Guidelines range of 6 to 12 months.

                                Respectfully submitted,

                                LORETTA E. LYNCH
                                United States Attorney

                 By:   /s/
                      Soumya Dayananda
                      Andrew E. Goldsmith
                      Assistant U.S. Attorneys
                      (718) 254-7996/6498

cc:  Clerk of the Court, (SJ)
    Bruno C. Bier, Esq. (By ECF)